NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DERRICK COLEMAN, *Appellant*.

No. 1 CA-CR 15-0316
FILED 03-24-2016

Appeal from the Superior Court in Maricopa County
No. CR 2013-002197-003
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Poster Law Firm, P.L.L.C., Phoenix
By Rick D. Poster
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

D O W N I E, Judge:

¶1        Derrick Coleman appeals his convictions and sentences for conspiracy to commit possession of marijuana for sale and possession of marijuana for sale, class 2 felonies.[1]   *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-1003(A), (D), 13-3405(A)(2), (B)(6).  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), Coleman's counsel has searched the record, found no arguable question of law, and asked us to review the record for reversible error.  *See State v. Richardson*, 175 Ariz. 336, 339 (App. 1993).  Coleman had the opportunity to file a supplemental brief *in propria persona*, but he did not do so.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On January 17, 2013, members of the Maricopa County Sheriff's Office special investigations division conducted a marijuana reversal operation in which a confidential informant ("CI") sold marijuana to various individuals, including Coleman.  The CI arrived at the reversal operation location and parked her police-issued vehicle, loaded with 200 pounds of marijuana, in the garage.  After the garage door was closed, two men unloaded the marijuana into the home.  A short while later, Coleman and his co-defendant arrived at the residence in a white minivan.  The CI moved her vehicle out of the garage and Coleman pulled in, bringing with him the money to purchase the marijuana.

¶3        Coleman, his co-defendant, the CI, and others counted the money, and the CI saw bundles of marijuana being loaded into Coleman's van.  Detective Fausto, the CI's "handler," heard her say over audio surveillance that "the marijuana was put in the white minivan that was in

---

[1]      Coleman was initially indicted on a third count — money laundering in the second degree, a class 3 felony.  However, at the close of the State's case, Coleman moved for a directed verdict on all counts, and the court granted his motion as to the third count.

the garage." Soon after the CI left, Coleman and his co-defendant also departed, and the case agent, Sergeant Uptain, ordered surveillance detectives to stop the van. Detective Pearce conducted the traffic stop, and, as he approached on foot, he noticed "a very strong odor of marijuana coming from the vehicle." Detective Iwan was asked to assist with the traffic stop in progress because Detective Pearce "needed a narcotics dog to detect if there was marijuana" in Coleman's van. Within six feet of the van, Detective Iwan could "smell the odor that [he knew] to be marijuana." Nonetheless, he continued his approach, and his dog alerted to the presence of drugs by scratching the van's rear passenger door. Detectives proceeded to search the van and found four bundles of marijuana (totaling 96 pounds) concealed under clothing in the rear compartment of the van.

¶4        At the location of the traffic stop, Sergeant Uptain read Coleman his *Miranda* rights, confirmed Coleman understood them, and interviewed him. Coleman denied seeing the marijuana in the home he had just come from, denied knowing how the marijuana ended up in the back of his van, denied smelling it even though Sergeant Uptain described the odor as "very strong," and explained the $42,000 in cash found in his co-defendant's purse constituted gambling winnings.

¶5        The jury found Coleman guilty as charged and further found the offenses were committed with the presence of an accomplice and in anticipation of pecuniary gain. The superior court sentenced Coleman to four years' imprisonment on each count, with the terms to be served concurrently, and ordered him to pay a $4,000 fine. *See* A.R.S. §§ 13-701(D) (aggravating circumstances), 13-3405(D) (fines for marijuana offenses).

## DISCUSSION

¶6        We have read and considered the brief submitted by Coleman's counsel and have reviewed the entire record. *See Leon,* 104 Ariz. at 300. We discern no reversible error. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory range. The superior court awarded Coleman 40 days of presentence incarceration credit. We discern no error in this calculation, though the record before us does not clearly reflect the time Coleman spent in custody before being released on his own recognizance. Coleman was present at all critical phases of the proceedings and was represented by counsel. The jury was properly impaneled and instructed consistent with the offenses charged. The record reflects no irregularity in the deliberation process.

**CONCLUSION**

¶7        We affirm Coleman's convictions and sentences. Counsel's obligations pertaining to Coleman's representation in this appeal have ended. Counsel need do nothing more than inform Coleman of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Coleman shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: RT